WO                                                                                                          SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roberto Guerrero Carrizosa,<br><br>    Plaintiff,<br><br>vs.<br><br>Dora Schriro, et al.,<br><br>    Defendants. | No. CV 09-0512-PHX-JAT (LOA)<br><br>**ORDER** |

Plaintiff Roberto Guerrero Carrizosa filed this civil rights action under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADC). (Doc. 1.) Defendant Shelly Sonberg, Southern Regions Operation Director, moves for summary judgment. (Doc. 15.) Although the Court provided a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), advising Plaintiff of his obligation to respond and the requirements of Federal Rule Civil Procedure 56, Plaintiff filed no response, and the time to do so has expired. (Doc. 17.) The motion is ready for ruling.

The Court will grant Defendant's motion and terminate the case.

**I.    Background**

Plaintiff's sole ground for relief in his First Amended Complaint is that his Eighth Amendment rights were violated when Defendants repeatedly denied his requests for protective segregation despite knowledge that Plaintiff's name appears on a gang hit list and that Plaintiff has been previously assaulted by other inmates. The Court directed Sonberg to answer and dismissed the other Defendant. (Doc. 4.)

Defendant moves for summary judgment on the grounds that (1) she did not violate Plaintiff's Eighth Amendment rights because she was not deliberately indifferent to Plaintiff's safety concerns, and (2) she is entitled to qualified immunity on the damages claims. (Doc. 15.)

**II.     Motion for Summary Judgment**

    **A.     Legal Standards**

          **1.     Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates

the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 248-49.

### 2. Threat to Safety

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (internal quotations omitted). To prevail on an Eighth Amendment failure-to-protect claim, a plaintiff must demonstrate facts that satisfy a two-part test showing that the defendant was deliberately indifferent. First, the plaintiff must prove that objectively he suffered a sufficiently serious deprivation. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Then, he must prove the subjective element; that the defendant had a culpable state of mind—was deliberately indifferent—in allowing the deprivation to occur. Id. at 299.

A prison official has a sufficiently culpable mind only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Gibson v. County of Washoe, 290 F.3d 1175, 1187-88 (9th Cir. 2002). Where an inmate's claim is based on the alleged failure to prevent harm, the inmate may satisfy the "sufficiently serious" requirement by showing the existence of "conditions posing a substantial risk of

1 serious harm" to him. Farmer, 511 U.S. at 834. And to prove knowledge of the risk, the
2 prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may
3 be sufficient to establish knowledge. See id. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077
4 (9th Cir. 1995).

### B.  Parties' Contentions

#### 1.  Defendant

In support of her motion, Defendant submits her Statement of Facts (Doc. 16 (DSOF)); and her declaration (id., Ex. A), with attachments, including Director's Instruction (DI) #67, *Protective Segregation* (id, Attach. 1) and Plaintiff's PS documents (id. Attachs. 1-8).

At the time relevant to Plaintiff's Complaint, the ADC's PS process was set out in DI 67. (Doc. 16, DSOF ¶ 4.) Placement in PS is carefully scrutinized—officials must screen inmates to assure that they are not attempting to infiltrate protective custody to harm someone already there. (Id. ¶ 5.)

An inmate in need of protection can be placed in PS; transferred to another prison unit; or transferred to a unit designed for vulnerable inmates. (Id. ¶¶ 6-7, 9.) The greatest degree of protection is afforded by PS status, i.e. placement in a unit that houses other inmates identified as having safety concerns. (Id. ¶ 6.) Alternatively, an inmate can be transferred to a different prison unit if an inmate has a conflict with particular inmates but is otherwise able to live among other prisoners. (Id. ¶ 7.) When an inmate is determined to pose a threat to the safety of another inmate, he is included on the inmate's "Do Not House With" ("DNHW") list, and they are not housed where they would have contact with each other. This information is included in the inmate's computerized Adult Inmate Management System (AIMS) file. (Id. ¶ 8.) Another protective arrangement is to transfer an inmate to a unit designed specifically for vulnerable inmates (e.g. child molesters and other sex offenders). (Id. ¶ 9.)

When an inmate requests protection, he is immediately isolated in a safe, secure area and then moved to a detention unit. (Id. ¶ 11.) The Shift Commander initiates the PS

screening process by completing the necessary paper work, including a statement from the inmate and investigation report, and forwarding all documents to the Deputy Warden (DW). (Id. ¶¶ 11-15.) The inmate's previous requests for PS are obtained from the Central Office. (Id. ¶ 14.) The DW reviews the documentation and determines whether an investigation by the Criminal Investigation Unit (CIU) is needed. (Id. ¶¶ 15-16.) If the he DW determines further investigation is not needed, the DW assures that the inmate's DNHW list is up to date and documented, along with the reason for the decision and any housing changes. (Id. ¶ 16.)

The DW makes a recommendation and forwards everything to the Warden, who does an independent review and recommendation. (Id. ¶ 17.) The Warden forwards the packet to the PS Administrator at the ADC Central Office. The PS Administrator and PS Committee review the packet for final determination; they do not substantively review the decisions of the DW or Warden. (Id.) The inmate can appeal the decision of the PS Committee to the Regional Operations Director of Deputy Division Director. (Id. ¶ 18.)

As to Plaintiff, Defendant asserts that on May 10, 2007, Plaintiff requested PS because other inmates told him that his "paperwork" was "no good." (Id. ¶ 19.) He refused to name the inmates, claimed he was on a New Mexican Mafia ("NMM") hit list at ASPC-Eyman-Rynning Unit, but agreed that PS was not necessary and that he could be moved to another unit with names added to his DNHW list. (Id.)

Plaintiff requested PS again on February 11, 2008, because he was threatened due to an incident that happened in 2005 with a [old] Mexican Mafia ("EME") member, as well as with the NMM. (Id. ¶ 20.) Defendant alleges that there was no verification that Plaintiff's name was on an EME "hit list," and he again agreed that PS was not necessary and agreed to be moved to another unit with names added to his DNHW list.

Plaintiff requested PS again on or about March 21, because he was on NMM and EME hit lists and would not be safe on any general population yard. (Id. ¶ 21.) The Deputy Warden, Warden, and PS Committee all recommended alternate placement, not PS. Plaintiff appealed the denial to Defendant, who denied the appeal on August 19, 2008, because:

- The CIU thoroughly investigated the claims, and although Plaintiff's name was found on a "list" confiscated by staff, there was no validation that the names on the list were

- 5 -

in danger throughout the ADC or that they had a "hit" on them by an STG.

- The claims that there was a threat from anyone on the Mohave Unit; or a threat due to the STG NMM; or a prior issue at the County Jail (which was not verified by the jail staff when contacted), were all uncorroborated and unverified through the investigation.

- The investigations into Plaintiff's safety issues were done using all of the resources available to help corroborate his claims and to evaluate his concerns. After that review was complete and a determination was made, if Plaintiff elected to refuse to comply with the decision of this DI 67 process, he was advised that he would be managed through the other departmental orders, Discipline and Classification, to address his behavior.

- His appeal provided no new information regarding his safety concerns or other information that had not already been reviewed and considered.

- Although he claimed he was threatened while housed in the SMU-I (Special Management Unit I), the claim was not verified through the investigation.

- The inmates identified by Plaintiff as a threat were added to his DNHW list.

(Id. ¶ 22.) In her denial, Defendant stated that it was her belief that returning Plaintiff to GP, away from his known DNHWs, was appropriate and that "[a]lthough the Deputy Warden and Warden recommended a transfer to another GP, there was no information provided that would have compelled [her] to change the approval of the PSC to return him to his own Unit." (Id., Attach. 5, Sonberg Appeal Resp., dated Aug. 19, 2008.)

Plaintiff requested PS again on October 17; he was threatened because he had a prior DI 67. (Id. ¶ 23.) The Deputy Warden determined that PS review was not necessary and recommended movement to another location away from DNHW inmates. Plaintiff's appeal was denied by the Warden on October 29. (Id.) On January 15, 2009, Plaintiff requested PS again, asserting the because he attacked another inmate in the Pima County jail he was now on an NMM hit list. (Id. ¶ 24.) PS was denied on August 27, 2009, by a PSC different from the one Defendant reviewed on appeal. Plaintiff's appeal was denied by John Hallahan, Division Director of Offender Operations, on September 11, 2009. (Id. ¶ 24.)

On or about September 24, 2009, Plaintiff requested PS again stating that an inmate had been demanding $500 a month from him to prevent him from being "hit." (Id. ¶ 25.) Prison officials noted this was Plaintiff's sixth PS request and that his name was found on two "hit" lists; Plaintiff was given PS status on November 3, 2009. (Id.)

- 6 -

Defendant argues that Plaintiff's claim for injunctive relief is moot because he was placed in PS in November 2009. (Doc. 15 at 9.) She further argues that although Plaintiff blames her for denying his August 2008 PS appeal, Plaintiff does not claim that he was assaulted after that denial and a failure to prevent future harm is not cognizable under § 1983 for money damages. (Id.) She asserts that Plaintiff cannot recover damages for psychological harm. (Id. at 10.) And Defendant argues that she acted reasonably because although Plaintiff was not placed in PS in 2008, he was moved to a different location, away from inmates on his DNHW list. (Id.) Finally, she asserts an entitlement to qualified immunity. (Id. at 12.)

### 2. Plaintiff

As previously noted, Plaintiff did not respond to Defendant's Motion for Summary Judgment. Because a verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence, the Court will consider the allegations set forth in Plaintiff's Complaint. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

In his Complaint, Plaintiff alleged that he sought PS four times and been denied four times. (Doc. 1.) He asserted that he was assaulted by two inmates on May 4, 2007, but ADC staff continues to deny that he was assaulted. After being denied PS on February 28, 2008, he was transferred to Kaibab Winslow and because of his PS issues—he is on a Mexican Mafia hit list—he refused to go to the yard. The Assistant DW told him that he had to go to the yard. Plaintiff asserted that he lasted only half a day before getting into a confrontation. He was not assaulted. A staff member told him he was on the Mexican Mafia hit list. He again requested PS and was denied; he was transferred to Mohave Douglas where there were inmates who knew him. He was not assaulted but again requested PS. He claimed that the hit list was found in someone's cell during a search. Due to his name being on the list, Plaintiff was told he was being recognized by prison officials as a suspected gang member, which resulted in his reclassification. But even so, Defendant denied his request for PS. Plaintiff was transferred to Cimarron.

While on the bus, Plaintiff was threatened, so he again requested PS and was denied. Plaintiff asserted that officials looked at the circumstances of his case and found nothing to indicate that his issues were STG related or that there was a state-wide threat. He again asserted that some staff members told him he was on a hit list. He also alleged that this time he was even denied alternate placement by Defendant and was sent back to his yard.

**C.  Analysis**

The Court finds that Defendant is entitled to summary judgment. She offers evidence that she was not deliberately indifferent to Plaintiff's safety concerns, and Plaintiff fails to establish a material dispute of fact as to Defendant's alleged deliberate indifference with regard to the 2008 PS denial.

It is undisputed that Plaintiff waived his right to appeal both the May 2007 and February 2008 denials of placement in PS. (Doc. 16, Ex. A, Attach. 2, PS Screening, dated May 16, 2007, Attach. 3, PS Screening, dated Feb. 19, 2008.) A memorandum, dated February 15 and related to the February 2008, request shows that the AIMS file did not show that Plaintiff was on a hit list but rather that his name was on a list of inmates aligned with an SMU-II faction of the new Mexican Mafia. (Id., Attach. 3.) And there is no evidence that Defendant had any involvement in those PS denials.

The evidence shows that the finding of Plaintiff's affiliation with a gang was affirmed in the investigation made pursuant to Plaintiff's March 2008 PS request. (Id., Attach. 4, PS Decision Worksheet, dated July 8, 2008.) The investigation also showed no verified threat to Plaintiff, including no threat at Mohave. (Id.) Defendant reviewed Plaintiff's appeal from this denial and denied the appeal. (Id. Attach. 5, Sonberg Appeal Resp., dated Aug. 19, 2008.) It appears from the record that it was not until some time in 2009 that any official indicated that Plaintiff's name may, in fact, have been on two hit lists. (Id., Attach., PS Worksheet, date April 4, 2009.) Although Plaintiff's January 2009 request for PS was denied, it does not appear that Defendant had any involvement in that decision. Plaintiff does not dispute that the appeal was denied by another official. (DSOF ¶ 26.) Plaintiff was placed in PS pursuant to his next request.

1    Defendant's only involvement was the August 2008 denial of Plaintiff's appeal. The records shows that she considered the evidence presented, which included no verified threat and no threat to Plaintiff on Mohave. Although prison officials were apparently incorrect regarding their determination that Plaintiff's name was not on a hit list, there is nothing to show that Defendant was deliberately indifferent to a known danger in 2008. In other words, there is no evidence that Defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed by not placing Plaintiff in PS *and that she drew the inference.* See Farmer, 511 U.S. at 837. "Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial, criminal, and often violent, conduct." Hudson v. Palmer, 468 U.S. 517, 526 (1984). "In deciding how to protect a prisoner, officials may face a number of choices, each posing potential dangers to the prisoner and others. Choosing the optimal 'prophylactic or preventive measures' to prevent violence and maintain safety is difficult and not readily susceptible to judicial evaluation." Berg v. Kincheloe, 794 F.2d 457, 461 (9th Cir. 1986), citing Whitley v. Albers, 475 U.S. 312, 322 (1986). Plaintiff's disagreement with Defendant's decision is not enough to demonstrate deliberate indifference. It is undisputed that Plaintiff has not been assaulted.

The Court finds that there is no material dispute of fact regarding whether Defendant was deliberately indifferent to Plaintiff's safety. It need not consider Defendant's remaining arguments.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 15).

(2) Defendant's Motion for Summary Judgment (Doc. 15) is **granted**, and the claims are dismissed with prejudice.

///
///
///

(3) The action is terminated, and the Clerk of Court must enter judgment accordingly.

DATED this 21st day of July, 2010.

James A. Teilborg
United States District Judge